**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NATHAN BRUNSWICK**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>**UNISYS CORPORATION**,<br><br>Defendant. | **COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND**<br><br>Case No.: |

COMES NOW Plaintiff, NATHAN BRUNSWICK by and through his undersigned attorneys, and hereby brings this Collective and Class Action Complaint against Defendant, UNISYS CORPORATION, and states as follows:

## INTRODUCTION

1. This is a class and collective action brought by Plaintiff on behalf of himself and all similarly situated current and/or former Customer Service Representative employees of Defendant to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Utah Payment of Wages Act, Utah Code Ann. §§ 34-28, *et seq.*, and alleged contractual obligations (or unjust enrichment if no contract is found), and other appropriate rules, regulations, statutes, and ordinances.

2. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendant's call center locations, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and boot-down activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related

emails.") Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

3.      Defendant subjected Plaintiff, and those similarly situated, to Defendant's policy and practice of failing to compensate its call center employees for their necessary boot-up and boot-down work, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

4.      Plaintiff seeks a declaration that his rights, the rights of the FLSA Collective Class, and the rights of the Rule 23 Classes were violated and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which he and the putative Classes may be entitled.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

6.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

8.      Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

9.      Defendant's employees, including Plaintiff, engage in interstate commerce— including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

10.     This Court has personal jurisdiction over Defendant because it maintains offices in the State of Pennsylvania.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides within this District.

## PARTIES

12.     Plaintiff is an individual who resides in the County of Salt Lake, City of West Valley, Utah. Plaintiff worked for Defendant as a Customer Service Representative from February 2012 to April 2021. Plaintiff executed his Consent to Sue form, attached hereto as Exhibit B.

13.     Defendant is a Delaware corporation with its principal place of business in Pennsylvania.

14.     Defendant operates customer service call center locations and/or employs remote customer service employees in Utah, Pennsylvania, and Georgia. *See* Job Postings, attached hereto as Exhibit C.

15.     Upon information and belief, Defendant transitioned its customer service workforce to remote positions in and around March 2020.

16.     Defendant is "a global information technology company that builds high-performance, security-centric solutions." *See* Exhibit C. Defendant provides "advanced IT

3

solutions to businesses and governments around the world." *About Unisys*, Unisys.com, https://www.unisys.com/about-unisys/ (last visited April 19, 2022).

17.     Defendant may accept service via its registered agent Corporation Service Company at 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110.

## GENERAL ALLEGATIONS

18.     Defendant employed Plaintiff as an hourly call center Customer Service Representative ("CSR"). Defendant assigns CSRs, like Plaintiff, to answer customer calls from Defendant's clients.

19.     Plaintiff's primary job duties included answering calls from Defendant's customers and providing customer service and help desk support. More specifically, this included troubleshooting mortgage loan application software, troubleshooting user accounts, correcting errors, assisting with finding information, and helping to resolve other customer issues.

20.     Throughout Plaintiff's employment with Defendant, Plaintiff regularly worked at least 40 hours per workweek.

21.     Regardless of whether Defendant scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time off-the-clock as part of his job duties as a CSR. Defendant never compensated Plaintiff for this necessary time worked off-the-clock.

22.     29 C.F.R. § 553.221 provides:

Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

4

23.     29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

**A.     *Unpaid Boot-Up Work.***

24.     Defendant tasked Plaintiff with providing customer service to Defendant's clients by use of Defendant's telephones, Defendant's computers, and the programs accessible from Defendant's computers.

25.     To access Defendant's systems, Plaintiff, and all other current and/or former CSRs, must turn on or wake up their computers, enter their credentials, and then log in to multiple computer programs, servers, and applications.  Once this boot-up work is completed, Plaintiff, and all other current and/or former CSRs, must log in to Defendant's phone system to take their first call at their scheduled shift start time.

26.     In addition to completing the process described above, CSRs who worked remotely also had to log in to Defendant's virtual private network (VPN).

27.     Defendant does not compensate Plaintiff, and all other current and/or former CSRs, until they have logged into the phone system and marked themselves "available" to take incoming calls.

28.      Regardless of how long the boot-up and log-in work takes, Defendant did not compensate Plaintiff for this time.

29.     Regardless of how long the boot-up and log-in work takes, Defendant did not allow Plaintiff, and all other current and/or former CSRs, to clock in before their scheduled shift start time.

30.     The boot-up work Plaintiff, and all other current and/or former physical call center CSRs, must complete before they begin being compensated is the same regardless of which call center location they worked at.

31.     The boot-up work Plaintiff, and all other current and/or former remote call center CSRs, must complete before they begin being compensated is the same regardless of where they worked remotely.

32.     The boot-up and log-in procedure is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

33.     Thus, the unpaid boot-up work performed by Plaintiff, and all other current and/or former CSRs, directly benefits Defendant.

**B.     Unpaid Boot-Down Work.**

34.     Defendant required Plaintiff, and all other current and/or former CSRs, to first clock out of the timekeeping system, then spend time closing out of the necessary programs, servers, and applications, logging out of the desktop, and then shutting down or putting to sleep their computer. Regardless of how long the boot-down work takes, Defendant did not compensate Plaintiff for this time.

35.     In addition to completing the process described above, CSRs who worked remotely also had to log out of Defendant's VPN.

36.     The boot-down work performed by Plaintiff, and all other current and/or former CSRs, was integral and indispensable to the primary job duties of Defendant's CSRs and directly benefited Defendant.

**C.     Defendant's Policy and Practice of Off-the-Clock Work Violates Federal and Utah State Law.**

37.    At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former CSRs, to routinely perform off-the-clock boot-up work by not compensating its employees until after they completed the boot-up and login procedure.

38.    At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former CSRs, to routinely perform off-the-clock boot-down work by stopping compensation to its employees before completion of the boot-down and log out procedure.

39.    Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

40.    Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CSRs, for their compensable boot-up and boot-down work performed in any amount.

41.    Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up and boot-down work performed.

42.    Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CSRs, for their boot-up and boot-down work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

43.    For example, during the pay period of April 25, 2021 to May 1, 2021, Defendant paid Plaintiff for 40 hours of work. *See* Exhibit D. However, the hours Defendant paid Plaintiff did not include the boot-up and boot-down work as alleged herein. Had Defendant properly paid Plaintiff for all hours worked during this pay period, then it would have paid him additional overtime wages equal to the uncompensated boot-up and boot-down work.

44.     Defendant is aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendant's own payroll records reflect the number of hours it paid Plaintiff.

45.     Defendant is aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendant's own payroll records reflect the hourly rate it paid Plaintiff. For example, Plaintiff's hourly rate for the exemplar week noted above was $17.28 per hour. *See id.*

46.     Defendant knew or should have known that Utah wage and hour laws require an employer to pay employees wages for each hour worked. *See* Utah Code Ann. § 34-28-3.

47.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CSRs working in Defendant's call center locations or remotely in Utah for their compensable boot-up and boot-down work performed in workweeks totaling less than 40 hours and in workweeks totaling in excess of 40 hours at the proper legal rates, including overtime premiums.

48.     Defendant knew or should have known that Utah wage and hour laws require an employer to promptly pay employees for their earned wages. *See* Utah Code Ann. § 34-28-5.

49.     In reckless disregard of the FLSA and Utah wage and hour laws, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiff, and all other current and/or former CSRs, to perform compensable boot-up and boot-down work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all straight time and overtime performed by Plaintiff, and all other current and/or former CSRs, in violation of the FLSA and Utah wage and hour laws.

### D.    *Recordkeeping.*

50.    The Utah wage and hour laws require that "[e]very employer shall keep a true and accurate record of time worked and wages paid each pay period to each employee who is employed on an hourly or a daily basis." See Utah Code Ann. § 34-28-10.

51.    Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

52.    Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

53.    Upon information and belief, Defendant failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA and Utah wage and hour laws because it failed to include the off-the-clock boot-up and boot-down work on Plaintiff's and all other current and/or former CSRs' payroll records.

54.    When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

55.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the

FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

56.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

**Physical Call Center Collective**

> *All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked in a physical call center for Unisys Corporation at any time in the last three years.*

**Remote Call Center Collective**

> *All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked remotely for Unisys Corporation at any time in the last three years.*

(hereinafter referred to as the "FLSA Collectives"). Plaintiff reserves the right to amend these definitions as necessary.

57.     Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

58.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying its CSR employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and

one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

59.     Upon information and belief, Plaintiff estimates the FLSA Collectives, including both current and former call center employees over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collectives should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records; and from input received from members of the FLSA Collectives as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

60.     Plaintiff shares the same interests as members of the FLSA Collectives in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

## THE UTAH WAGE AND HOUR LAW CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

**Physical Call Center Utah Class**

*All current and former Customer Service Representative employees in Utah, and/or other job titles performing the same or similar job duties, who worked in a physical call center for Unisys Corporation at any time in the last three years.*

**Remote Call Center Utah Class**

*All current and former Customer Service Representative employees in Utah, and/or other job titles performing the same or similar job duties, who worked remotely for Unisys Corporation at any time in the last three years.*

11

(hereinafter referred to as the "Utah Classes"). Plaintiff reserves the right to amend these definitions as necessary.

62.    *Numerosity:* The members of the Utah Classes are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as Classes will benefit the parties and the Court. The precise number of members of the Classes should be readily available from a review of Defendant's personnel and payroll records.

63.    *Commonality/Predominance:* There is a well-defined community of interest among members of the Utah Classes and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a.    Whether Defendant violated Utah Code Ann. § 34-28-3 by failing to pay current and former employees for all wages earned;

b.    The proper measure of damages sustained by the proposed Utah Classes; and

c.    Whether Defendant violated Utah Code Ann. § 34-28-10 by failing to make, keep, and preserve true and accurate payroll records.

64.    *Typicality:* Plaintiff's claims are typical of those of the Utah Classes in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Utah members' claims and Plaintiff's legal theories are based on the same legal theories as all other members of the Utah Classes: whether all members of the Utah Classes were employed by Defendant on an hourly basis without receiving compensation for all wages earned.

65.    *Adequacy:* Plaintiff will fully and adequately protect the interests of the Utah Classes and Plaintiff retained national counsel who are qualified and experienced in the

prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Utah Classes.

66.    *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for members of the Utah Classes to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Utah Classes' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Utah Classes' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

67.    The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Utah Classes within that group a separate opt-out notice pertaining to their rights under the Utah state law. Plaintiff and his counsel know of no unusual difficulties in the case and Defendant has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[1]

68.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative

Class defined to include:

### Physical Call Center Nationwide Class

*All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked in a physical call center for Unisys Corporation at any time in the last six years.*

### Remote Call Center Nationwide Class

*All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked remotely for Unisys Corporation at any time in the last six years.*

(hereinafter referred to as the "Nationwide Classes"). Plaintiff reserves the right to amend these

definitions as necessary.

69.    *Numerosity:* The members of the Nationwide Classes are so numerous that joinder

of all members in the case would be impracticable, and the disposition of their claims as Classes

will benefit the parties and the Court. The precise number of members of the Classes should be

readily available from a review of Defendant's personnel and payroll records.

70.    *Commonality/Predominance:* There is a well-defined community of interest among

members of the Nationwide Classes and common questions of both law and fact predominate in

the action over any questions affecting individual members. These common legal and factual

questions include, but are not limited to, the following:

a.    Whether Defendant offered to pay Plaintiff and the Nationwide Classes certain rates (depending on the technical job titles) per hour for each hour worked as call center employees;

---

[1] To the extent the Court finds, or Defendant argues, the employment relationship between itself and its CSRs did not form a contract, Plaintiff reserves the right to seek Rule 23 class certification under Plaintiff's and the Nationwide Class' quasi-contract claims (Count IV).

      b.      Whether Plaintiff and the Nationwide Classes accepted Defendant's offer by performing the essential functions of the job;

      c.      Whether Defendant breached the contract by failing to pay Plaintiff and the Nationwide Classes for each and every hour worked; and

      d.      Whether Plaintiff and the Nationwide Classes were damaged.

71.    *Typicality:* Plaintiff's claims are typical of those of the Nationwide Classes in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other members of the Nationwide Classes' claims and Plaintiff's legal theories are based on the same legal theories as all other members of the Nationwide Classes: whether Defendant and the members of the Nationwide Classes were employed under an implied contract to be paid for each and every hour worked by Defendant.

72.    *Adequacy:* Plaintiff will fully and adequately protect the interests of the Nationwide Classes and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Nationwide Classes.

73.    *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for members of the Nationwide Classes to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Nationwide Classes' claims, even if each member of the Nationwide Classes could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a

class action would permit the efficient supervision of the putative Nationwide Classes' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

74.    The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Nationwide Classes within that group a separate opt-out notice pertaining to their rights under the common law. Plaintiff and his counsel know of no unusual difficulties in the case and Defendant has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES
(FLSA Collective Classes)

75.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

76.    At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

77.    Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

78.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

79.    Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

80.    The position of Customer Service Representative is not exempt from the FLSA.

81.    Defendant's other job titles performing similar customer service representative job duties are not exempt from the FLSA.

82.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

83.    The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

84.    Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

85.    Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

86.    Defendant's violations of the FLSA were knowing and willful.

87.    By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated CSRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to CSRs, or other job titles performing the same or similar

job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

88.    None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Classes.

89.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

### VIOLATIONS OF THE UTAH PAYMENT OF WAGES ACT
### (Utah Classes)

90.    Plaintiff, individually and on behalf of the proposed Utah Classes, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

91.    Plaintiff and members of the Utah Classes are current and former employees of Defendant within the meaning of Utah Code Ann. § 34-28-9.5.

92.    Defendant at all relevant times was an employer within the meaning of Utah Code Ann. § 34-28-2.

93.    Defendant was required to pay Plaintiff and the Utah Classes for all hours worked.

94.    Utah Code Ann. § 34-28-3(1) requires every employer to pay all wages earned every pay period, including overtime pay.

95.    Utah Code Ann. § 34-28-5(1) provides that when an employer discharges an employee or an employee quits, the employer must pay the employee all wages due in a timely manner.

96.     Wages are defined as "the amounts due the employee for labor or services, whether the amount is fixed or ascertained on a time, task, piece, commission basis or other method of calculating such amount." Utah Code Ann. § 34-28-2(1)(i).

97.     Defendant, pursuant to its policies and illegal timekeeping practices, refused and failed to pay Plaintiff and the Utah Classes for all hours worked.

98.     By failing to properly compensate Plaintiff and the Utah Classes for all "labor or services" for which Plaintiff and members of the Utah Classes had a reasonable expectation of being paid, Defendant violated, and continues to violate its CSRs' statutory rights under Utah Code Ann. §§ 34-28-3(1) and 34-28-5(1).

99.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the proposed Utah Classes have suffered damages in an amount to be determined at trial.

100.    Plaintiff is exempt from exhausting the administrative remedies described in § 34-28-9 because Plaintiff's wage claim is over $10,000.

101.    Plaintiff is also exempt from exhausting the administrative remedies described in § 34-28-9 because Plaintiff brings a Collective and Class Action whereby the aggregate amount of the employees' combined wage claim is greater than $10,000.

102.    Plaintiff and the proposed Utah Classes seek damages in the amount of their unpaid straight-time and overtime wages for all hours worked, statutory interest and penalties described in Utah Code Ann. § 43-28-9.5(3), costs for this action, pre- and post- judgment interest, and such other legal and equitable relief as the Court deems proper.

## COUNT III

### BREACH OF CONTRACT
### (National Breach of Contract Classes)

103.    Plaintiff and the Nationwide Classes re-allege and incorporate all previous paragraphs herein and further allege as follows.

104.    Plaintiff and the Nationwide Classes were hired at various times. Defendant offered to pay Plaintiff and the Nationwide Classes certain rates per hour for each hour worked as a CSR. Each member of the Nationwide Classes' contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of their regular business activities.

105.    Plaintiff and the Nationwide Classes accepted the offer and worked for Defendant as CSR, and/or other job titles performing the same or similar job duties.

106.    Plaintiff and the Nationwide Classes also accepted the offer by their performance— i.e., reporting for work and completing the tasks assigned to them.

107.    Plaintiff's duties, and the duties of the Nationwide Classes, required boot-up and boot-down work.

108.    Plaintiff and every other member of the Nationwide Classes performed under their contract by doing their jobs in addition to carrying out the off-the-clock duties Defendant required.

109.    Upon information and belief, Defendant does not compensate its CSRs, and/or other job titles performing the same or similar job duties, until after the boot-up and log-in procedures are complete.

110.    Upon information and belief, Defendant does not compensate its CSRs, and/or other job titles performing the same or similar job duties, after they clock-out and perform the boot-down and log out procedures.

111.    Despite being required to complete these integral boot-up and boot-down duties, Plaintiff and the Nationwide Classes were not compensated at their hourly rate for their work performed.

112.    By failing to pay Plaintiff and the Nationwide Classes for the boot-up and boot-down work Defendant breached its contract with Plaintiff and the Nationwide Class to pay their hourly rate for each hour worked.

113.    Defendant breached its duty to keep accurate records and to keep track of the time Plaintiff and other members of the Nationwide Classes spent performing boot-up and boot-down work, which is a fundamental part of an employer's job.

114.    In sum, the facts set forth above establish the following elements and terms of the contract:

     a.    Offer: a set hourly rate for each hour worked as a CSR;

     b.    Acceptance: Plaintiff and the Nationwide Classes accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant);

     c.    Breach: Defendant did not pay Plaintiff and the Nationwide Classes for each hour (or part thereof) worked; and

     d.    Damages: By failing to pay Plaintiff and the Nationwide Classes their hourly rate for each hour worked, Plaintiff and the Classes were damaged in an amount to be determined at trial.

115.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

116.    As a direct and proximate cause of Defendant's breach, Plaintiff and the Nationwide Classes were damaged in an amount to be proven at trial.

## COUNT IV

### QUASI-CONTRACTUAL REMEDIES: UNJUST ENRICHMENT
### (National Unjust Enrichment Classes)

117.    Plaintiff and the Nationwide Classes re-allege and incorporate all previous paragraphs herein and further allege as follows.

118.    Upon information and belief, Plaintiff's and every other member's of the Nationwide Classes boot-up and boot-down work—which is integral and indispensable to their principal activities as a CSR—provided valuable work and income for Defendant; namely, compensation to Defendant for completing customer service activities that directly benefited Defendant.

119.    Boot-up Work: Plaintiff and the Nationwide Classes were unable to perform any job function without turning on or waking up their computer, logging in to the desktop, and opening the required programs. In short, to start their work of fielding customer calls precisely at their designated start time, Plaintiff and the Nationwide Classes worked off-the-clock before their shift began. Without the boot-up work, Plaintiff and the Nationwide Classes were unable to take customer calls at their designated start time. Further, upon information and belief, Defendant does not compensate its CSRs until after the boot-up procedures are complete.

120.    Boot-down Work: Plaintiff and the Nationwide Classes were unable to complete their job function without closing the required programs, logging out of the desktop, and shutting down or putting to sleep their computers at the end of their shifts. In short, to end their work of fielding customer calls at precisely their scheduled shift end time, Plaintiff and the Nationwide Classes worked off-the-clock after their shift to log out of necessary programs and boot down their computer. Without the boot-down work, Plaintiff and the Nationwide Classes were unable to take customer calls up to their scheduled shift end time. Further, upon information and belief, Defendant stops compensating CSRs after their final call of the day and before the boot-down procedures are complete.

121.    As part of their ongoing employment relationships with Defendant, Plaintiff and other members of the Nationwide Classes expected to be paid wages for the time they spent doing their jobs, including performance of the necessary boot-up and boot-down work performed each shift.

122.    By not paying Plaintiff and other members of the Nationwide Classes for the time they spent performing necessary boot-up and boot-down activities, Defendant was, and continues to be, unjustly enriched at the expense of Plaintiff and the Nationwide Classes in an amount to be determined at trial.

123.    By not paying Plaintiff and other members of the Nationwide Classes for the time they spent performing necessary activities, Defendant also saved, and continues to save, itself hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiff's and Nationwide Classes' benefit.

124.    It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Nationwide Classes without compensation.

125.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States.

126.    As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Nationwide Classes were harmed at an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

     a.     An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

     b.     An Order certifying the Utah state law class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.      An Order certifying this action as a class action (for the Rule 23 Breach of Contract Nationwide Classes or for the Rule 23 Unjust Enrichment Nationwide Classes if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

d.      An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

e.      An Order designating Plaintiff to act as the Class Representatives on behalf of all individuals in the Utah Classes;

f.      An Order designating the Named-Plaintiff to act as the Nationwide Class Representative on behalf of all similarly situated individuals for the FLSA and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

g.      An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

h.      An Order declaring that Defendant violated its obligations under the FLSA;

i.      An Order declaring that Defendant willfully violated the Utah Payment of Wages Act and its attendant regulations as set forth above;

j.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid minimum wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of 40 hours per week;

k.      An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid wages found owing to Plaintiff under the FLSA, in addition to all penalties and damages owed under the Utah Payment of Wages Act and its attendant regulations as set forth above;

l.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

m.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.      An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through his undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated: July 25, 2022                                        Respectfully submitted,

s/ _____
LOCAL COUNSEL

Kenneth J. Grunfeld (PA Bar No. 84121)
**GOLOMB SPIRT GRUNFELD, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
T: (215) 985-9177
F: (215) 985-4136
E: kgrunfeld@golomblegal.com

*Local Counsel for Plaintiff*

Jacob R. Rusch (MN Bar No. 0391892)*
Zackary S. Kaylor (MN Bar No. 0400854)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiff*

*\*Pro Hac Vic forthcoming*